UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARK PILYAVSKY,

                       Plaintiff,

    -against-

UNITED STATES DEPARTMENT OF JUSTICE
10th Street and Constitution Ave., N.W.
Washington, D.C. 20530

and

FEDERAL BUREAU OF INVESTIGATION,
9TH Street and Pennsylvania Ave., N.W.
Washington, D.C. 20535

and

ALBERTO GONZALES,
in his official capacity as Attorney General,
U.S. Department of Justice
10th Street and Constitution Ave., N.W.
Washington, D.C. 20530

and

ROBERT S. MUELLER, III,
in his official capacity as Director,
Federal Bureau of Investigation
9th Street and Pennsylvania Ave., N.W.
Washington, D.C. 20535
                       Defendants.
------------------------------------------------------------

**05 CV 2920**
Judge Denny Chin
Magistrate Judge Henry Pitman
ECF CASE

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

        Plaintiff, Mark Pilyavsky ("Plaintiff" or "Plaintiff Pilyavsky"), by his attorneys, Levine & Blit, PLLC, and for his Complaint against Defendants the United States Department of Justice ("DOJ"), the Federal Bureau of Investigation ("FBI"), Alberto Gonzales in his official

capacity as Attorney General ("AG"), and ROBERT S. MUELLER, III, in his official capacity as Director, Federal Bureau of Investigation ("DFBI"), collectively ("Defendants") alleges as follows:

## THE PARTIES

1. Plaintiff Pilyavsky, is a citizen of the State of New York. At all times relevant to the complaint at issues Plaintiff was a resident of the State of New York residing at 5409 108th Street, Corona NY, 11368.

2. Plaintiff Pilyavsky has an M.S. and a B.S. in Chemical Engineering from Lvov Polytechnical College in the Ukraine that he earned in 1970.

3. Plaintiff Pilyavsky worked in the Ukraine for approximately 19 years at the Institute for Petrochemical Chemical Engineering where he was a design engineer and, eventually, senior design engineer.

4. Plaintiff Pilyavsky is fluent and further was certified by the FBI in three foreign languages (Russian, Polish and Ukrainian).

5. Plaintiff Pilyavsky was employed by Defendant FBI in New York County, New York beginning in February of 2001.

6. Plaintiff Pilyavsky worked as a Linguist translating tapes and documents from Russian, Polish and Ukrainian into English.

7. Plaintiff Pilyavsky also monitored electronic surveillances for the FBI.

8. Plaintiff Pilyavsky has a significant mental illness that substantially limits one or more major life activities.

9. In particular, Plaintiff Pilyavsky has been diagnosed with, *inter alia*, depressive and bi-polar disorder. Plaintiff Pilyavsky is on medication for these mental conditions and regularly visits a doctor for treatment of these disabilities.

10.     Plaintiff Pilyavsky is a qualified individual with a disability for purposes of the Rehabilitation Act of 1973.

11.     Defendant DOJ is a department of the executive branch of the United States government.

12.     Defendant DOJ is an executive agency within the meaning of 29 USC § 794 of the Rehabilitation Act

13.     Defendant FBI is an Agency of the DOJ.

14.     Defendant FBI is a program or activity conducted by an executive agency within the meaning of 29 USC § 794 of the Rehabilitation Act.

15.     Defendant Alberto Gonzales heads the DOJ and has the ultimate responsibility for supervising the operations and functions of the DOJ.

16.     Defendant Robert S. Mueller is the director of the FBI and is responsible for supervising all of that agency's operations.

17.     Defendants discriminated against Plaintiff Pilyavsky because of his disability and based on their perception that he had a disability.

## THE NATURE OF THE ACTION

18.     This is a civil action for damages and remedies brought under The Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 et seq. ("The Rehabilitation Act") and the Equal Protection Clause of the Fourteenth Amendment by virtue of 42 U.S.C. § 1983.

19.     Specifically, Defendants discriminated against Plaintiff Pilyavsky because of his disability, and their perception of his disability, by scrutinizing his work inordinately and firing him.

20.     Defendants also scrutinized Plaintiff's work and fired him in retaliation for

his efforts to report this discriminatory conduct.

## JURISDICTION & VENUE

21.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 for civil actions arising under the laws of the United States and 28 U.S.C. 1343 for actions under laws providing for the protection of civil rights.

22.     Declaratory and injunctive relief are sought under 28 U.S.C. § 2201 et seq.

23.     Plaintiff Pilyavsky filed an Equal Employment Opportunity ("EEO") complaint of discrimination against the FBI with the DOJ on or about June 18, 2004.

24.     The DOJ's final action, dismissing Plaintiff's complaint, was mailed to Plaintiff on or about December 21, 2004.

25.     Plaintiff received such letter on or after December 27, 2004.

26.     Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in the Southern District of New York.

## FACTS

27.     On or about February 2001, Plaintiff Pilyavsky began working for the FBI as a linguist.

28.     Plaintiff Pilyavsky's position was described as that of a contract linguist.

29.     Plaintiff Pilyavsky worked under a Basic Ordering Agreement ("BOA") which explicitly indicates that it is not a contract between Plaintiff Pilyavsky and the FBI.

30.     Supervisory Language Specialist Misikoff ("SLS Misikoff" or "Mr. Misikoff"), in a Sworn Statement dated September 1, 2004, however, indicated that the relationship

between his office and Plaintiff Pilyavsky was a contractual relationship.

31. These contradictory matters are consistent with what appears to be a manipulation of the employment relationship by the Defendants designed to allow them to exploit workers like Plaintiff and deny them the essential rights established by, *inter alia,* The Americans with Disabilities Act, Rehabilitation Act, and the U.S. Constitution.

32. The nature of Plaintiff Pilyavsky's employment relationship with the FBI is that of an employee, not that of a contractor. Several factors establish this fact including:

   (a) Plaintiff Pilyavsky's performed his work only in the New York FBI Office – not at home or any other location;
   (b) Plaintiff Pilyavsky was assigned specific FBI work space which he did not share with other employees;
   (c) Plaintiff Pilyavsky's work was reviewed frequently for quality;
   (d) Plaintiff Pilyavsky performed his work under the direction and control of the FBI;
   (e) Plaintiff Pilyavsky used FBI supplies and equipment paid for out of the FBI New York Office and Language Services Section budget;
   (f) Plaintiff Pilyavsky received special training in order to allow him to perform his job better. Additional training was anticipated and promised to Plaintiff Pilyavsky;
   (g) Plaintiff Pilyavsky has a long standing employment relationship with the FBI which started in 2001.

33. Plaintiff Pilyavsky began working for Defendant FBI in February of 2001.

34. Plaintiff's evaluations those for 2001 and 2002, were satisfactory as well.

35. From August through December of 2003, Plaintiff Pilyavsky was the only linguist working both Russian and Ukrainian lines.

36. On or about October 23, 2003, Plaintiff Pilyavsky's received a satisfactory evaluation for his performance in 2003.

37. Plaintiff Pilyavsky's satisfactory performance evaluation in 2003 was crucial because new guidelines were implemented in the FBI for the evaluations and Quality Control that year.

38. On or about November, 2003, SLS Misikoff was promoted to the position of Supervisory Language Specialist (SLS2). In the same year, SLS Carlo Dionisi ("SLS Dionisi") became Plaintiff's Supervisory Language Specialist (SLS1)

39. As a result, Mr. Misikoff and SLS Dionisi took on a more significant supervisory role regarding Plaintiff Pilyavsky's work.

40. Upon information and belief, Mr. Misikoff and SLS Dionisi were aware of Plaintiff's disability because Plaintiff Pilyavsky was required to disclose such condition to the FBI.

41. Upon information and belief, SLS Misikoff and SLS Dionisi perceived Plaintiff Pilyavsky to be disabled.

42. Upon information and belief, SLS Misikoff and SLS Dionisi wanted Plaintiff Pilyavsky out of the FBI because of this disability and because of their perception of Plaintiff as disabled.

43. At the end of December 2003, under Mr. Misikoff's supervision, Plaintiff was given a Russian-to-English translation to complete.

44. Plaintiff submitted this translation to Senior Language Specialist (SLS) Olga Rudenko ("SLS Rudenko").

45. SLS Rudenko made some changes to this translation that Plaintiff Pilyavsky did not agree with.

46. The corrections were minor corrections and, upon information and belief, were made by SLS Rudenko at the insistence of Mr. Misikoff.

47. On or about January 2004, Plaintiff Pilyavsky met with SLS Dionisi and SLS Misikoff to discuss the translation further and to voice his objections to the criticism he received.

48. Upon information and belief, SLS Misikoff called Plaintiff's translation a complete failure.

49. Plaintiff Pilyavsky advised SLS Misikoff that the FBI agents were happy with his work.

50. SLS Misikoff advised Plaintiff Pilyavsky that the opinions of FBI agents did not matter.

51. SLS Misikoff advised Plaintiff Pilyavsky that, in the future, all of his translations must be given in draft form to SLS Rudenko for preliminary review.

52. Upon information and belief, other linguists were not required to have their work reviewed in this manner.

53. Upon information and belief, the scrutiny of Plaintiff Pilyavsky's work and the review requirements were the result of Mr. Misikoff's discrimination against Plaintiff based upon his disability and based upon the perception that he was disabled.

54. On or about March 10, 2004, SLS Misikoff gave Plaintiff Pilyavsky a progress review.

55. At this review, SLS Misikoff told Plaintiff Pilyavsky that he did not know how to use proper grammar, and that his analytical skills were lacking.

56. Plaintiff Pilyavsky was threatened, in writing, that he had 30 days to show significant improvement, or face termination.

57. Plaintiff Pilyavsky mentioned to SLS Misikoff that he was not given the on-the-site training, that other linguists, including part-timers, were given.  Only after hearing this did SLS Misikoff suggest that Plaintiff Pilyavsky should receive some additional training.

58. Upon information and belief, Plaintiff was never provided with the training SLS Misikoff recommended though there were such training classes offered in the New York FBI office.

59. Upon information and belief these other linguists who were not disabled and were not perceived to be disabled received such training.

60. In order to attempt to comply with SLS Misikoff's request for improvement, Plaintiff Pilyavsky enrolled in a business writing course at the Borough of Manhattan Community College in the spring of 2004 on his own.

61. Shortly after his evaluation, Plaintiff Pilyavsky was told by SLS Dionisi that he could not translate Ukrainian any longer because he lacked the appropriate certifications.

62. Plaintiff Pilyavsky objected and pointed out that a newly hired linguist, who translated Ukrainian, was not certified in the Ukrainian language but was allowed to work.

63. Plaintiff had been translating Ukrainian without certification for several months before that and had successfully passed Part 1 of his Ukrainian certification in April 2003.

64. Plaintiff Pilyavsky successfully passed his complete certification in the Ukrainian language in April 2004.

65. Upon information and belief this restriction on Plaintiff Pilyavsky's work was the result of discriminatory animus and was orchestrated by SLS Misikoff.

66. SLS Dionisi also advised Plaintiff Pilyavsky that his deadline to show improvement was pushed back to July of 2004.

67. Upon information and belief, this deadline change was the result of a discussion between SLS Misikoff and Plaintiff Pilyavsky.

68. During that discussion, Plaintiff advised SLS Misikoff that he believed the scrutiny he was being subjected to was the result of his disability or perceived disability.

69. Upon information and belief, the initial review and written deadline

disappeared from Plaintiff Pilyavsky's personnel file after the above referenced discussion.

70. Shortly thereafter, SLS Dionisi advised Plaintiff Pilyavsky that he would be provided with training in Washington D.C. in May 2004.

71. Plaintiff Pilyavsky informed SLS Dionisi that he probably could not attend the training at that time, but would be willing to go on any other occasion.

72. SLS Dionisi advised Plaintiff that he could not attend the training at any other time.

73. Upon information and belief SLS Dionisi and SLS Misikoff both knew that Plaintiff would not be able to attend the training in May 2004, and offered training on this date because they knew he could not attend.

74. Plaintiff was never given the chance to have the training opportunities specifically recommended by Mr. Misikoff in his evaluation.

75. Upon information and belief, other linguists where were not disabled or perceived to be disabled were provided with such training and were given more flexible alternatives than those given to Plaintiff Pilyavsky.

76. In fact, upon information and belief, the FBI New York offices had on-site training for skills improvement.

77. Upon information and belief, the one-day-long training sessions were available for about two weeks in February 2004, but Plaintiff Pilyavsky was deliberately excluded from any of these sessions.

78. Upon information and belief, Plaintiff Pilyavsky was excluded because of his disability or perceived disability.

79. Plaintiff Pilyavsky learned about the availability of this training later.

80. Upon information and belief SLS Misikoff knew about this training, but chose not to inform Plaintiff Pilyavsky that it was available.

81. Upon information and belief SLS Misikoff did not inform Plaintiff Pilyavsky of the training because he wanted to get rid of Plaintiff Pilyavsky.

82. Upon information and belief SLS Misikoff wanted to get rid of Plaintiff Pilyavsky because he is disabled and because he perceived Plaintiff Pilyavsky to be disabled.

83. On or about March 15, 2004, Plaintiff Pilyavsky went to see an EEO counselor at the local FBI New York office to express his concerns about the discrimination he was being subjected to

84. The counselor advised Plaintiff of his options and Plaintiff indicated that he would like to mediate the dispute.

85. Plaintiff was praised for his decision to mediate by the DOJ Alternative Dispute Resolution manager.

86. Mediation was not successful.

87. From March through until August 26, 2004, Plaintiff's work was reviewed several times.

88. Upon information and belief these frequent reviews were in retaliation for Plaintiff Pilyavsky's attempts to obtain relief from the discrimination he was suffering.

89. Upon information and belief, despite the retaliatory scrutiny, Plaintiff received positive reviews of his translations on July 19, 2004, August 17, 2004, and August 25, 2004.

90. Remarks on such reviews included a remark by a reviewer on or about July 30, 2004, that Plaintiff's "translation is satisfactory rendered in very good English".

91. One quality review rated Plaintiff's work as unsatisfactory.

92. Despite this set of reviews, SLS Dionisi did not praise Plaintiff Pilyavsky for his accomplishments.

93. Instead, during Plaintiff Pilyavsky's annual 2004 review, SLS Dionisi

remarked that he could not make a recommendation, one way or the other, regarding the continuation of Plaintiff Pilyavsky's employment relationship with the FBI.

94. Plaintiff Pilyavsky was not given an opportunity to rebut or challenge any aspect of this questionable evaluation.

95. In fact, Plaintiff Pilyavsky was not given additional training or guidance.

96. Plaintiff Pilyavsky's employment with the FBI ended on September 29, 2004.

97. Upon information and belief, similar, non-disabled linguists who did not file charges of discrimination, were hired as linguists with the FBI while Plaintiff Pilyavsky was harassed and fired.

98. Upon information and belief, similar linguists who were not perceived to be disabled and did not file charges of discrimination were hired as linguists with the FBI while Plaintiff Pilyavsky was harassed and fired.

99. The discriminatory acts described above are a representative but not exhaustive list of those Plaintiff Pilyavsky has been subjected to.

100. Medical documentation demonstrates that Plaintiff Pilyavsky's mental disabilities and suffering had been exacerbated as a result of the above-referenced actions by the Defendants.

101. On or about March 3, 2004, the offices of Levine and Blit, PLLC, attorneys for Plaintiff Pilyavsky, contacted the FBI, by fax and regular mail, expressing a desire to resolve this issue.

102. Upon information and belief the FBI provided no response.

## FIRST CAUSE OF ACTION
### (Disability Discrimination in Violation of The Rehabilitation Act Against All Defendants)

103. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 102 as if separately set forth herein.

104. Section 504 of the Rehabilitation Act, 29 USC § 794 provides:
No otherwise qualified individual with a disability in the United States … shall, solely by reason or her or his disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination … under any program or activity conducted by any Executive Agency …

105. Defendant DOJ is an executive agency and Plaintiff Pilyavsky's employment with the FBI constitutes a program or activity conducted by an Executive agency as described above.

106. Plaintiff Pilyavsky, solely by reason of his disability and/or the perception of others that he had a disability, has been denied the benefits of employment with the DOJ and FBI in violation of the Rehabilitation Act.

107. Plaintiff Pilyavsky, as a result, has been harmed as a result of Defendant's unlawful acts.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of The Rehabilitation Act Against All Defendants)

108. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 107 as if separately set forth herein.

109. The Rehabilitation Act prohibits programs or activities conducted by an Executive Agency from retaliating against employees who file a suit or complaint alleging discrimination.

110. Defendants operate programs and activities conducted by an Executive agency.

111. Defendants discriminated against Plaintiff Pilyavsky in retaliation for his

actions in opposition to the disability discrimination he was subjected to, including his filing of a complaint.

112. Defendants' actions in this respect have harmed Plaintiff Pilyavsky.

### THIRD CAUSE OF ACTION
**(Deprivation of Constitutional Rights Against All Defendants)**

113. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 112 as if separately set forth herein.

114. By virtue of the foregoing actions, including those actions under color of law and official policy and custom purporting to deny Plaintiff the civil rights protections afforded to him as an employee, Defendants have denied Plaintiff Pilyavsky his rights under 29 U.S.C. § 794 in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution.

115. Such actions have caused Plaintiff physical and emotional distress.

116. These claims are actionable under 42 U.S.C. § 1983.

WHEREFORE, while reserving the right to seek additional damages as available, Plaintiff demands judgment against Defendants as follows:

A. A declaratory judgment in favor of Plaintiff Pilyavsky, against Defendants, declaring that Defendants have violated The Rehabilitation Act of 1974 and/or, Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment enforceable by virtue of 42 U.S.C. § 1983.

B. On the all Causes of Action, back pay and benefits and front pay and benefits, plus compensatory and punitive damages, all in amounts to be determined at trial, as well as attorneys' fees, costs and interest;

   C. Such other and further relief as this Court deems just and proper.


Dated: New York, New York
    March 16, 2005

                Levine & Blit, PLLC


                By:_____
                  Matthew J. Blit (MJB 4145)
                  Attorney for Plaintiff
                  350 Fifth Avenue
                  New York, New York 10118
                  (212) 967-3000


UNITED STATES DEPARTMENT OF JUSTICE
10th Street and Constitution Ave., N.W.
Washington, D.C. 20530

FEDERAL BUREAU OF INVESTIGATION
9TH Street and Pennsylvania Ave., N.W.
Washington, D.C. 20535

ALBERTO GONZALES
in his official capacity as Attorney General
U.S. Department of Justice
10th Street and Constitution Ave., N.W.
Washington, D.C. 20530

ROBERT S. MUELLER, III,
in his official capacity as Director,
Federal Bureau of Investigation
9th Street and Pennsylvania Ave., N.W.
Washington, D.C. 20535