```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -x
                                        :
MARK PILYAVSKY,                         :
                                        :
                  Plaintiff,            :
                                        :
       -against-                        :
                                        :
UNITED STATES DEPARTMENT OF             :   MEMORANDUM DECISION
JUSTICE, FEDERAL BUREAU OF              :
INVESTIGATION, ALBERTO GONZALES,        :   05 Civ. 2920 (DC)
in his official capacity as             :
Attorney General, and                   :
ROBERT S. MUELLER III, in his           :
official capacity as Director of        :
the Federal Bureau of                   :
Investigation,                          :
                                        :
                  Defendants.           :
                                        :
- - - - - - - - - - - - - - - - - - - -x
```

**APPEARANCES:**    LEVINE & BLIT, PLLC
                    Attorneys for Plaintiff
                        By: Matthew J. Blit, Esq.
                            Patrick J. Boyd, Esq.
                    Empire State Building
                    350 Fifth Avenue, Suite 6902
                    New York, NY  10118

                    MICHAEL J. GARCIA, ESQ.
                    United States Attorney for the Southern District
                      of New York
                    Attorney for Defendants
                        By: Pierre G. Armand, Esq.
                            Assistant United States Attorney
                    86 Chambers Street
                    New York, NY  10007

**CHIN, D.J.**

Plaintiff Mark Pilyavsky brings this employment discrimination action under Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "Act"). Pilyavsky worked as a contract linguist for the Federal Bureau of Investigation ("FBI") and alleges that he was discriminated against because of his

disabilities.  Defendants move to dismiss the complaint, arguing that the Court lacks subject matter jurisdiction because Pilyavsky was an independent contractor and only federal employees, not independent contractors, can bring discrimination claims under the Act.  For the reasons set forth below, at this early stage of the litigation I cannot conclude as a matter of law that Pilyavsky was an independent contractor.  The motion to dismiss is therefore denied.

## BACKGROUND

**A. The Facts**

The facts are taken from the complaint, as well as documents referenced therein and declarations submitted by the parties in support of and opposition to the motion to dismiss.[1]

Pilyavsky, who was certified by the FBI as being fluent in Russian, Polish, and Ukrainian, began working for the FBI as a "contract linguist" in February of 2001.  (Compl. ¶¶ 4-5, 28). As a contract linguist, Pilyavsky translated tapes and documents from Russian, Polish, and Ukrainian into English, and also monitored FBI electronic surveillance.  (Id. ¶¶ 6-7).  He performed this work in the New York FBI office in specifically assigned work space.  (Id. ¶ 32(b)).  His work was performed at the direction and control of the FBI, and was reviewed frequently

---

[1] Although on a 12(b)(1) motion to dismiss, the court generally accepts uncontroverted allegations of the complaint as true, a court may resolve disputed facts by referring to evidence outside of the pleadings.  Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

for quality. (Id. ¶¶ 32(c) & (d)). He used FBI supplies and FBI equipment. (Id. ¶ 32(e)). The FBI required contract linguists to pass the FBI's Foreign Language Test Battery, and to obtain FBI security clearance prior to performing any translation services. (Misikoff Decl. ¶¶ 8, 24).

More than two years after he started, in the fall of 2003, Pilyavsky and the FBI signed a "Basic Ordering Agreement" ("BOA"),[2] which described Pilyavsky's duties and set forth the procedures governing his work with the FBI. (Id. ¶ 29; BOA at 27). The BOA provided that, as a contract linguist, Pilyavsky was expected to:

- provide verbatim or summary translations of tapes and documents from Russian, Ukrainian, and Polish into English, and vice versa (BOA at 2-3);

- provide translation assistance in FBI interrogations, interviews, and polygraph examinations (id. at 3);

- testify in federal court as to the accuracy of translations (id.);

- possess knowledge of culture, current world affairs, terminology, and basic institutional knowledge related to investigative fields (id.) and;

- be proficient in the use of computer and word processing software (id.).

The BOA provided that:

The [BOA] is not a contract. It is a written instrument of understanding negotiated between an agency, and a contractor that contains --

---

[2] The BOA was signed by Pilyavsky on September 6, 2003, and by a representative of the FBI on October 1, 2003.

> (a) terms and clauses applying to future
> orders between the parties during its term,
>
> (b) a description, as specific as
> practicable, of the services to be provided,
> and
>
> (c) methods for pricing, issuing and
> delivering future orders under the BOA.
>
> A BOA is not a contract.
>
> This BOA does not state or imply any
> agreement by the FBI to place future orders
> with the Contractor.
>
> Contractors are <u>not</u> considered Federal
> Government employees.
>
> Contractors shall be issued a work order when
> the FBI has a language related assignment.
>
> This BOA does not state or imply that the
> contractor shall continually work 40 hours
> per week once an order has been placed.
>
> Hours worked shall be based on the needs of
> the FBI and availability of funds.

(BOA at 1). Notwithstanding the language of the BOA otherwise, Leonard Misikoff, Pilyavsky's supervisor, describes the BOA as a "final contract" in a declaration submitted in support of defendants' motion to dismiss. (Misikoff Decl. ¶ 3).

The terms of Pilyavsky's employment as a contract linguist differed substantially from the terms of employment of "Language Specialists," whom the FBI considers to be full-time FBI employees. (<u>Id.</u> ¶ 9). For example, Language Specialists execute agreements by which they agree to be available for temporary duty anywhere in the world according to the needs of the FBI (<u>id.</u> ¶ 11); perform certain collateral duties such as attending job fairs or escorting individuals through FBI offices

- 4 -

who do not have security clearances (id. ¶ 12); may not seek outside employment (id. ¶ 14); may not take an active part in political campaigns (id. ¶ 16); are required to work forty hours a week (id. ¶ 18); and receive employment benefits such as paid leave and health and life insurance (id. ¶ 25). By contrast, contract linguists make no agreement to be available anywhere in the world; may not be assigned "collateral duties" that are not specifically enumerated in the BOA; may hold outside employment; make their own hours (within certain parameters); and do not receive employment benefits. (Id. ¶¶ 11, 12, 14, 18, 25).

Pilyavsky's work relationship with the FBI ended in September 2004, after the FBI decided not to renew his contract. (Compl. ¶ 96; Misikoff Decl. ¶ 3).

### B. Procedural History

Plaintiff filed the complaint on March 16, 2005, asserting causes of action under Section 504 of the Act and 42 U.S.C. § 1983. By order dated July 15, 2005, and on consent of the parties, I dismissed the Section 1983 claim and deemed the Section 504 claim a claim under Section 501 of the Act. This motion followed.

## DISCUSSION

Defendants move to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), on the grounds that plaintiff was not an employee within the meaning of Section 501 of the Act. Drawing all reasonable inferences in favor of Pilyavsky, it cannot be

said at this stage of the litigation that he was an independent contractor as a matter of law. Hence, the motion is denied.

**A. Applicable Law**

**1. Motion to Dismiss Standard**

The extent to which a district court must accept the allegations of the complaint as true on a motion to dismiss for lack of subject matter jurisdiction is somewhat tricky business. On the one hand, the Second Circuit has held that a district court is bound to accept all of the allegations of the complaint as true. See Railia v. United States, 355 F.3d 118, 119 (2d Cir. 2004) ("When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff."); see also Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997) ("Under [Rule 12(b)(1)], the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff."). On the other hand, the Second Circuit has also held that the district court need not -- indeed, must not -- accept all allegations in the complaint as true. See Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998) ("[I]t was error for the district court to accept the mere allegations of the complaint as a basis for finding subject matter jurisdiction . . . . Our rule is that, on a challenge to the district court's subject matter jurisdiction, the court may resolve disputed jurisdictional fact issues by reference to

evidence outside the pleadings, such as affidavits.") (quotations omitted); see also Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000) ("On a Rule 12(b)(1) motion . . . , the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings.").

The Court resolves this apparent inconsistency by accepting all uncontroverted factual allegations in the complaint as true but examining evidence outside the pleadings when a factual attack is made upon the complaint's allegations. See 5B Charles Alan Wright et al., Federal Practice & Procedure § 1350 (3d ed. 2004) ("[I]t has been well established in the case law that the pleading will be read . . . with all uncontroverted factual allegations . . . accepted as true. However, once a factual attack is made on the federal court's subject matter jurisdiction, the district judge is not obliged to accept the plaintiff's allegations as true and may examine the evidence to the contrary and reach his or her own conclusion on the matter.").[3]

---

[3] As Professor Wright and his colleagues further explain:

> [w]hen the movant's purpose is to challenge the substance of the jurisdictional allegations, he may use affidavits and other additional matter to support the motion . . . . [T]he district court [has] broad discretion to consider relevant and competent evidence on a motion to dismiss for lack of subject matter jurisdiction to resolve factual issues. When the motion is directed solely at the sufficiency of the complaint's jurisdictional allegations, then it is unlikely that affidavits or other materials outside the pleadings will be necessary.

As the party seeking to invoke the subject matter jurisdiction of the district court, the plaintiff bears the burden of proving by a preponderance of the evidence that it exists. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). A court should "'constru[e] all ambiguities and draw[ ] all inferences' in a plaintiff's favor." Aurecchione v. Schoolman Transp. Svs. Inc., 426 F.3d 635, 638 (2d Cir. 2005); see also Makarova, 201 F.3d at 113.

### 2. Section 501

It is undisputed that defendants are entities of the United States Government or individuals sued in their official capacities as officers of the United States Government. The United States, as sovereign, "is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Mitchell, 445 U.S. 535, 538 (1980). The doctrine of sovereign immunity is jurisdictional in nature, and therefore the plaintiff bears the burden of proving that his claims fall within an applicable waiver. Makarova, 201 F.3d at 113.

The Act provides, in pertinent part: "[t]he remedies, procedures, and rights set forth [in the Act] . . . shall be available . . . to any employee or applicant for employment." 29

---

5B Charles Alan Wright et al., Federal Practice & Procedure § 1350 (3d ed. 2004).

U.S.C. § 794a(a)(1). Therefore, the Court has subject matter jurisdiction only if Pilyavsky was an employee of the government, and not if he was an independent contractor. See Lopez v. Johnson, 333 F.3d 959, 961 (9th Cir. 2003) ("Lopez can state a claim against the Secretary of the Navy under section 501 only if . . . he was a federal employee.").

The Act does not define who qualifies as an "employee" for purposes of Section 501. It is well established that "when Congress uses the term 'employee' without defining it with precision, courts should presume that Congress had in mind 'the conventional master-servant relationship as understood by the common-law agency doctrine.'" O'Connor v. Davis, 126 F.3d 112, 115 (2d Cir. 1997) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-23 1992)).[4] In Community for Creative Non-Violence v. Reid, the Supreme Court explained that to determine whether a party is an employee, the court must consider the hiring party's "right to control the manner and means by which the product is accomplished," as well as other factors, including:

> the skill required; the source of the
> instrumentalities and tools; the location of

---

[4] The Restatement (Second) of Agency describes a servant, or employee, as an agent whose "physical conduct in the performance of the service is controlled or is subject to the right to control by the master." Restatement (Second) of Agency § 2(2) (1975). Conversely, the Restatement defines an independent contractor as "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." Id. § 2(3).

> the work; the duration of the relationship
> between the parties; whether the hiring party
> has the right to assign additional projects
> to the hired party; the extent of the hired
> party's discretion over when and how long to
> work; the method of payment; the hired
> party's role in hiring and paying assistants;
> whether the work is part of the regular
> business of the hiring party; whether the
> hiring party is in business; the provision of
> employee benefits; and the tax treatment of
> the hired party.

490 U.S. 730, 751-52 (1989).

The Second Circuit has articulated that, in applying Reid, the "greatest emphasis should be placed on the first factor -- that is, the extent to which the hiring party controls the 'manner and means' by which the worker completes his or her assigned tasks." Eisenberg v. Advance Relocation & Storage, Inc., 237 F.3d 111, 114 (2d Cir. 2000). This factor is entitled to added weight because, under the common law of agency, "an employer-employee relationship exists if the purported employer controls or has the right to control both the result to be accomplished and the manner and means by which the purported employee brings about that result." Id. (quotation omitted).

**B.  Application**

At issue is whether Pilyavsky has successfully alleged that he is an "employee" for purposes of the Act. Because I cannot say that, after discovery, Pilyavsky will be unable to prove he was an employee, I conclude that Pilyavsky should be given an opportunity to conduct discovery. Accordingly, the motion to dismiss is denied.

In his complaint, Pilyavsky alleges that his work relationship with the FBI was "that of an employee, not that of a contractor." (Compl. ¶ 32). In support of this allegation, the complaint alleges the following facts: Pilyavsky performed his work only in the New York FBI Office and never at home; he was assigned specific FBI work space that he did not share with other employees; his work was reviewed frequently for quality; he performed his work under the direction and control of the FBI; he used FBI supplies and equipment paid for by the FBI; he received special training to allow him to perform his job better; he anticipated and was promised additional training; and he had a long standing employment relationship with the FBI that started in 2001. (Id. ¶¶ 32(a)-(g)). Though the Court need not (and does not) accept as true the conclusory allegation that Pilyavsky was an employee, the factual allegations regarding the manner and means by which he accomplished his work are uncontroverted by anything that defendants have submitted; accordingly, they must be accepted as true for purposes of this motion.

Against this backdrop, the government points to several Reid factors in arguing that Pilyavsky was an independent contractor as a matter of law. Among them are (1) the contract linguist position "requires great skill" and contract linguists are therefore "expected to be self-sufficient with regard to the manner and means by which they perform their translations" (Gov't Br. at 14; Misikoff Decl. ¶ 20); (2) the FBI does not require contract linguists to utilize any particular translation

methods or sources (id.; see also Misikoff Decl. ¶ 20); (3) Pilyavsky did not receive employment benefits and the government did not pay or withhold taxes on his behalf (Gov't Br. at 17-18); (4) Pilyavsky had the right to turn down work (id. at 13-14); and (5) the responsibilities of a contract linguist were different from those of language specialists, whom the FBI considered to be full-time employees. (Id. at 15; Misikoff Decl. ¶¶ 10-16).

These facts do not resolve the issue as a matter of law. Put simply, resolution of this issue requires a fact-sensitive inquiry that is not resolvable at this early stage of the litigation. Eisenberg v. Advance Relocation & Storage, Inc., 237 F.3d 111 (2d Cir. 2000) -- a case relied upon by the government in support of its argument that this case should be resolved as a matter of law -- is instructive. In that case, there were factors on both sides of the employee/independent contractor spectrum. On the one hand, the plaintiff had been hired on a "permanent full-time basis" to perform the unskilled labor of loading and unloading furniture from trucks; was paid on an hourly basis and required to punch in and out; and had some control, though not "full" control, over her hours. 237 F.3d at 118. On the other hand, she worked for the defendant for only 28-35 days, did not receive any benefits such as vacation days or medical insurance, and was treated as an independent contractor for tax purposes (i.e., taxes were not withheld from her wages). Id. Relying heavily on these last facts, the district court held (on a summary judgment motion after discovery) that the plaintiff

was an independent contractor as a matter of law and dismissed the complaint.  Id. at 113.

The Second Circuit reversed, explaining that the district court had failed to place the "greatest emphasis" on the manner and means by which the plaintiff accomplished her work. Id. at 114.  Most importantly for purposes of this decision, the Second Circuit explained that "[t]he District Court's determination as to 'the presence or absence' of each Reid factor is a finding of fact that we review for clear error.  The District Court's 'ultimate determination' as to whether a worker is an employee or an independent contractor -- that is, the District Court's balancing of the Reid factors -- is a question of law that we review de novo."  Id. at 115.

Here, without a fully developed factual record it is simply impossible for the Court to make a determination as to the presence or absence of each of the Reid factors.  As noted above, Pilyavsky has alleged numerous specific and uncontroverted facts that, if true, could result in a finding that he was an employee.[5]  That is all he need do at this early stage of the litigation.  Drawing all reasonable inferences in his favor, the motion must therefore be denied and Pilyavsky should be given a

---

[5] As just one example, Pilyavsky alleges that his work was reviewed frequently for quality.  (Compl. ¶ 32(d)).  The government agrees that his work "was generally subject to review for purposes of quality control."  (Misikoff Decl. ¶ 21). Without more, the Court is unable to determine the extent to which the FBI controlled the manner and means of Pilyavsky's work and, drawing all inferences in favor of Pilyavsky, can only therefore conclude at this early stage that the FBI exercised at least some such control.

chance to prove his allegations in discovery. If, as seems possible, it is revealed after discovery that a factfinder applying the Reid factors could only reasonably find that Pilyavsky was an independent contractor, the complaint may be dismissed at the summary judgment stage. See, e.g., In re Vivendi Universal, S.A., No. 02 Civ. 5571 (RJH), 2004 WL 2375830, at *7 (S.D.N.Y. Oct. 22, 2004) ("The Court recognizes that this litigation is at an early stage and that the facts on which this Court relies in satisfying itself that subject matter jurisdiction properly exists may prove to be different than presently thought. In that instance, the Court will reexamine its subject matter jurisdiction."); Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London, 147 F.3d 118, 121 n.1 (2d Cir. 1998) ("In a close case, the factual basis for a court's subject matter jurisdiction may remain an issue through trial, and, if and when doubts are resolved against jurisdiction, warrant dismissal at that time."). For now, defendant's motion to dismiss is denied.

## CONCLUSION

Defendants' motion to dismiss for lack of subject matter jurisdiction is denied. The parties shall appear for a conference on March 31, 2006, at 10:00 a.m., in courtroom 11A of the United States Courthouse, 500 Pearl Street, New York, New York.

SO ORDERED

Dated: New York, New York
March 6, 2006

DENNY CHIN
United States District Judge